## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DAVID KARCH,** | : | **CIVIL ACTION NO.:** |
| | : | |
| **Plaintiff,** | : | |
| | : | _____ |
| **v.** | : | |
| | : | |
| **HARMAN INTERNATIONAL** | : | |
| **INDUSTRIES, INCORPORATED,** | : | |
| a Delaware corporation, | : | |
| | : | |
| **Defendant.** | : | **August 26, 2020** |

**GASIOREK MORGAN**
By: Sam Morgan (P-36694)
Attorneys for Plaintiff
30500 Northwestern Highway, Suite 425
Farmington Hills, Michigan 48334
(T) (248) 865-0001 / (F) (248) 865-0002
smorgan@work-lawyers.com

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, DAVID KARCH (referred to herein as "KARCH" or "Plaintiff"), by and through his attorneys, GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C., complains against Defendant as follows:

1.      This is an action for breach of contract arising out of a written "Letter Agreement" made between KARCH and Defendant HARMAN INTERNATIONAL

INDUSTRIES, INCORPORATED (referred to herein as "HARMAN"), on August 18, 2011. (Exhibit 1).

2.      The subject contract was made by KARCH and HARMAN in China, when KARCH on an assignment for HARMAN's Automotive Division, Asia.

3.      Immediately prior to KARCH's China assignment, KARCH was employed by HARMAN as a Senior Vice President, Officer and member of HARMAN's corporate Executive Committee, and his assigned office/place of employment was located at/within HARMAN's Automotive Division's Novi, Michigan offices.

4.      HARMAN breached the subject contract when, on August 31, 2014, upon KARCH's return to the United States from his China assignment, and the conclusion of KARCH's leave of absence from HARMAN's Executive Committee, HARMAN failed/refused to reinstate KARCH to a position on HARMAN's corporate Executive Committee, and failed to restore KARCH's base salary, target bonus opportunity, stock options and benefits to the level of an active member of HARMAN's corporate Executive Committee.

5.      HARMAN instead directed KARCH to return to work in a lower-level position in HARMAN's Automotive Division's Novi, Michigan office.

6.      As a result of HARMAN's breach of the August 18, 2011 contract, KARCH suffered substantial economic losses in the form of lower base salary, lower

bonus opportunity and bonus payments, a substantially lower number of stock options and stock grants (and the gains that KARCH would have realized upon the sale of that stock when Samsung Electronics Co., Ltd. (referred to herein as "SAMSUNG") purchased HARMAN's outstanding stock as part of a merger agreement in March 2017), and the loss of other benefits that active members of HARMAN's corporate Executive Committee received after the breach.

7.     KARCH demands a jury trial on all claims so triable.

## PARTIES

8.     KARCH is an individual who resides in Lake Milton, which is an unincorporated community located in Mahoning County, in the State of Ohio.

9.     HARMAN is a Delaware corporation with its corporate headquarters located in the City of Stamford, State of Connecticut.

10.     HARMAN is a "standalone" subsidiary corporation of SAMSUNG, which is a foreign corporation headquartered in Seoul, Korea.

11.     SAMSUNG acquired HARMAN's corporate stock pursuant to a merger agreement that was completed on or about March 10, 2017.

12.     HARMAN is also duly authorized to conduct business, and for decades has conducted, and continues to conduct, regular and systematic business activities within the State of Michigan, as the HARMAN Automotive Division.

13.     The HARMAN Automotive Division employs more than 1,000 people in Michigan, mostly at a sprawling facility located in the City of Novi, in Oakland County.

## JURISDICTION AND VENUE

14.     This Court has personal jurisdiction over the HARMAN because it is a foreign corporation duly authorized under Michigan law to conduct business, and has been conducting continuous and systematic business activities, within the State of Michigan at all times relevant to this cause of action.

15.     This Court has original subject matter jurisdiction over this cause of action, pursuant to 28 U.S.C. § 1332(a)(1) and (c)(1), because it is a civil action between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

16.     Venue is proper and convenient in this District under28 U.S.C. § 1391(b)(1), (2) and (3), because HARMAN is a resident of Michigan, subject to the personal jurisdiction of courts in Michigan, and a substantial part of events giving rise to this cause of action occurred in this Judicial district.

## FACTUAL ALLEGATIONS

17.     KARCH commenced employment with HARMAN on or about January 1, 1998 as the Director Manufacturing & Advanced Manufacturing Engineering.

18.    HARMAN promoted KARCH on or about January 1, 1999, to Vice President North America Far East Engineering, where he was assigned to work in HARMAN's Automotive Division office in Farmington Hills, Michigan.

19.    HARMAN promoted KARCH again on or about March 1, 2003, to Senior Vice President Global Manufacturing Quality, still assigned to work in HARMAN's Automotive Division office in Farmington Hills, Michigan.

20.    HARMAN promoted KARCH again on or about May 1, 2008, to Senior Vice President, Group Executive, Operational Excellence, where he was assigned to work at HARMAN's corporate headquarters in Stamford, Connecticut, and became a member of HARMAN's Executive Committee.

21.    HARMAN's Executive Committee consisted of two tiers, a senior group that included the now-former Chairman and Chief Executive Officer, Dinesh Paliwal, and a junior group; KARCH was part of the Executive Committee's senior group.

22.    HARMAN promoted KARCH again on or about July 1, 2010, to Executive Vice President, Operational Excellence and Head of Automotive Asia/Global Procurement, where he was assigned to work at HARMAN's facilities in Shanghai, China.

23.    KARCH continued in his senior role on HARMAN's Executive Committee.

24.    KARCH identified a weakness in HARMAN's China operations that was inhibiting its ability to attain desired growth in sales, especially for HARMAN's Automotive Division.

25.    In early May 2011, KARCH and Mr. Paliwal had discussions regarding KARCH's desire to focus on solving the problems that he had identified in HARMAN's China operations, so that HARMAN and its Automotive Division could attain desired growth in Asia sales.

26.    Mr. Paliwal agreed that KARCH should focus on China for the next year and proposed that KARCH take a 12-month leave of absence from the HARMAN Executive Committee.

27.    At a HARMAN Executive Committee meeting on or about May 25, 2011, the Executive Committee agreed that KARCH would take a leave of absence from the Executive Committee so that he could focus on developing HARMAN's automotive business in Asia.

28.    On or about August 18, 2011, KARCH and HARMAN entered into a written contract (Exhibit 1), when KARCH was in China, whereby HARMAN:

   a. Granted KARCH a temporary leave of absence from HARMAN's Executive Committee effective beginning June 1, 2011, to continue for a period of KARCH's assignment in China;

   b. Agreed that upon conclusion of the leave of absence KARCH would be reinstated to HARMAN's Executive Committee; and

c. Agreed that during the period of KARCH's assignment in China (referred to in the contract as KARCH's "Leave Period"), "all other terms and conditions of [his] employment (including, but not limited to, base salary, target bonus opportunity, stock options and benefits) [would] remain unchanged as if [he] were an active Executive Committee member."

29. The aforementioned contract (Exhibit 1) was executed on behalf of HARMAN by Mr. Paliwal and HARMAN's Chief Human Resources Officer, John Stacey.

30. On or about August 28, 2011, Mr. Stacey confirmed that KARCH would maintain an Executive Committee level bonus plan as if he were still actively on the HARMAN Executive Committee.

31. HARMAN extended KARCH's assignment in China beyond the initial 12-months, until KARCH returned to the United States on August 31, 2014.

32. During the period of KARCH's 48-month assignment in China, HARMAN failed to adjust KARCH's base salary, or establish his target bonus opportunity, or issue him stock options and stock grants, or provide him with retention bonuses, or provide him with employee benefits, as if here were still an active HARMAN Executive Committee member.

33. During his Leave Period (when plan-based compensation awards were typically granted), and continuing each year thereafter, HARMAN stopped setting KARCH's base salary, target or retention bonus opportunities, and HARMAN stopped granting KARCH stock awards and stock options at amounts or numbers,

or providing KARCH with the same benefits, as if he was an active member of the HARMAN Executive Committee.

34.    But for HARMAN's breach of its contractual obligation to maintain conditions of his employment (including, but not limited to, base salary, target bonus opportunity, retention bonuses, stock options and benefits) as if he were an active Executive Committee member, HARMAN would have paid KARCH significantly more money during his Leave Period as compensation in form of base salary, target bonuses, retention bonuses, stock options and stock grants, and other forms of compensation paid to active members of the Executive Committee.

35.    HARMAN also failed to reinstate KARCH to the HARMAN Executive Committee upon the conclusion of his assignment in China and return to the United States on August 31, 2014.

36.    HARMAN also failed to reinstate KARCH's base salary, or establish his target bonus opportunity, or issue him retention bonuses, or issue or grant him stock awards and stock options, or provide him with employee benefits, to the level KARCH previously received as a member of the HARMAN Executive Committee, upon the conclusion of his assignment in China and return to the United States on August 31, 2014.

37.    Instead of returning KARCH to a role on the HARMAN Executive Committee upon the conclusion of his assignment in China, HARMAN breached the

aforementioned contract by re-assigning KARCH to a Senior Vice President of Operations position in HARMAN's Automotive Division, in Farmington Hills, Michigan, reporting directly to a member of the HARMAN Executive Committee.

38.    Meanwhile, the Executive Vice President of Operations role in the senior tier of HARMAN's Executive Committee remained vacant and unfilled, as HARMAN sent KARCH to resolve operations problems at HARMAN facilities around the globe.

39.    At all times after KARCH's re-assignment to HARMAN's Automotive Division in Farmington Hills, Michigan, and despite HARMAN's breach of contract, KARCH performed his assigned duties and responsibilities in an exemplary manner.

40.    In or about October or November 2015, David Slump assumed the Executive Vice President of Operations position and ascended to a senior level role on HARMAN's Executive Committee.

41.    Mr. Slump was previously the Executive Vice President of Corporate Development and Strategy and a junior level member of HARMAN's Executive Committee, and lacks the operations, procurement and quality competencies and performance track record possessed by KARCH.

42.    KARCH was assigned to report to Mr. Slump in or about November 2015.

43.    But for HARMAN's breach of its contractual obligation to reinstate KARCH to the HARMAN Executive Committee on August 31, 2014, KARCH would naturally have filled the senior level Executive Committee role and Executive Vice President of Operations position.

44.    But for HARMAN's breach of its contractual obligation to maintain the terms and conditions of KARCH's employment (including, but not limited to, base salary, target bonus opportunity, retention bonuses, stock options and benefits) as if he were an active Executive Committee member, HARMAN would have paid KARCH significantly more money during 2014, and thereafter, as compensation in form of base salary, target bonuses, retention bonuses, stock options and stock grants, and other forms of compensation paid to active members of the Executive Committee.

45.    HARMAN's failure to restore KARCH to the senior level HARMAN Executive Committee role when it decided to fill the Executive Vice President position in October or November 2015, constitutes another, separate breach of the aforementioned August 18, 2011 contract.

46.    The negative financial impact of HARMAN's breaches of contract was especially damaging to KARCH in March 2017, when SAMSUNG's merger acquisition HARMAN closed and triggered the immediate vesting of all unvested stock options and restricted stock units granted (and which would have been granted,

but for the breach of contract) to KARCH and to all members of the HARMAN Executive Committee, and then the redemption (for cash, at $112.00 per share) of all HARMAN stock held by KARCH and all members of the HARMAN Executive Committee.

47.     At all times after KARCH was assigned to report to Mr. Slump, KARCH performed his assigned duties and responsibilities in an exemplary manner.

48.     On January 3, 2018, Mr. Slump notified KARCH that he was terminating KARCH's employment, effective February 16, 2018.

49.     But for HARMAN's breach of its contractual obligation to reinstate KARCH to the HARMAN Executive Committee upon the conclusion of his assignment in China, and its subsequent breach of the same contractual obligation when it decided to fill the Executive Vice President of Operations position, KARCH would have remained on HARMAN's Executive Committee in a more senior position to that of Mr. Slump, Slump would not have had the opportunity to terminate KARCH's employment, and KARCH would remain employed by HARMAN.

50.     In connection with HARMAN's termination of his employment, HARMAN was obligated to pay KARCH Severance Pay, reimburse him for the cost of his COBRA insurance premiums, and provide him with outplacement services for

12-months, pursuant to a Severance Agreement made between KARCH and HARMAN on or about January 22, 2009.

51.    The January 22, 2009 Severance Agreement did not include a waiver or release of claims or a covenant restricting KARCH's ability to sue HARMAN for breaching the August 18, 2011 contract.

52.    HARMAN paid KARCH the aforementioned severance and provided him with other benefits pursuant to the "Change in Control" provision of the January 22, 2009 Severance Agreement (i.e., because HARMAN terminated KARCH within two (2) years of SAMSUNG's acquisition of HARMAN through the merger that closed on March 10, 2017).

## LEGAL CLAIMS

### COUNT I
### BREACH OF CONTRACT

53.    Plaintiff re-alleges and incorporates by reference his allegations in paragraphs 1 through 52 as if hereinafter set forth paragraph by paragraph.

54.    KARCH and HARMAN entered into a valid contract on or about August 18, 2011 (Exhibit 1), whereby HARMAN:

> a.    Granted KARCH a temporary leave of absence from HARMAN's Executive Committee effective beginning June 1, 2011, to continue for a period of KARCH's assignment in China;

> b.    Agreed that upon conclusion of the leave of absence KARCH would be reinstated to HARMAN's Executive Committee; and

    c.   Agreed that during the period of KARCH's assignment in China, "all other terms and conditions of [his] employment (including, but not limited to, base salary, target bonus opportunity, stock options and benefits) [would] remain unchanged as if [he] were an active Executive Committee member."

55.    KARCH provided HARMAN with adequate and sufficient consideration in exchange for the contractual obligations undertaken by HARMAN under said contract.

56.    KARCH otherwise performed all of his obligations under said contract.

57.    No conduct by KARCH or other facts or circumstances exist or existed that excuse HARMAN from performing its obligations under said contract.

58.    HARMAN breached the aforementioned contract on August 30, 2014 by:

    a.   Failing and refusing to reinstate KARCH to HARMAN's Executive Committee upon the conclusion of his leave of absence and assignment in China and assigning him to a subordinate role and position in the HARMAN Automotive Division in Farmington Hills, Michigan;

    b.   Failing to restore KARCH to a senior level Executive Committee role when it decided to fill the Executive Vice President position in October or November 2015; and

    c.   Changing the terms and conditions of KARCH's employment to something significantly less than what he would have received had he been an active Executive Committee member, especially with respect to his base annual salary increases, annual incentive bonuses, long term incentive bonuses, retention bonuses, the number of stock options and/or stock grants that HARMAN issued to KARCH, and other items of compensation and pecuniary benefits.

59.     As a direct and proximate result of HARMAN's breach of contract KARCH has suffered damages, including but not limited to:

    a. Loss of employment, together with a loss of salary (back pay and future pay), lost incentive pay, bonus opportunities, equity and other executive compensation and benefits; loss of base salary increases that were otherwise paid to HARMAN's Executive Committee members during 2012 through 2018;

    b. Loss of additional annual incentive bonus money that HARMAN would otherwise have paid KARCH if he were an active Executive Committee member during each of the years 2012-2018;

    c. Loss of additional long-term incentive bonus money that HARMAN would otherwise have paid KARCH if he were an active Executive Committee member during each of the years 2012-2018;

    d. Loss of the retention bonuses that HARMAN would otherwise have paid KARCH if he were an active Executive Committee member during each of the years 2012-2018;

    e. Loss of stock options and/or stock grants that HARMAN would otherwise have issued or awarded to KARCH if he were an active Executive Committee member during each of the years 2012-2018, and the appreciation or monetary gains that KARCH would have received/realized on those stock options and/or stock grants when they would or could have been exercised and liquidated; and

    f. Loss of other compensation and pecuniary and other employee benefits that HARMAN provided to active members of the Executive Committee during each of the years 2012-2018, or that members of HARMAN's Executive Committed received under the Plan of Merger with SAMSUNG.

WHEREFORE, Plaintiff, DAVID KARCH respectfully requests that this Honorable Court enter a Judgment in his favor and award him money damages in an amount that is shown to be established by the proofs, together with interest and the

imposition of costs and attorney fees against Defendant, HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED.

**RESPECTFULLY SUBMITTED,**

By:    */s/Sam Morgan*_____
Sam Morgan (P36694)
**GASIOREK MORGAN**
Attorneys for Plaintiff
30500 Northwestern Highway, Suite 425
Farmington Hills, Michigan 48334
(T) (248) 865-0001 / (F) (248) 865-0002
smorgan@work-lawyers.com

Dated:  August 26, 2020

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **DAVID KARCH,** | : | |
| | : | **CIVIL ACTION NO.:** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | _____ |
| | : | |
| **HARMAN INTERNATIONAL** | : | |
| **INDUSTRIES, INCORPORATED,** | : | |
| a Delaware corporation, | : | |
| | : | |
| **Defendant.** | : | **August 26, 2020** |
| | : | |

## DEMAND FOR TRIAL BY JURY

Plaintiff, DAVID KARCH, hereby demands a trial by jury for purposes of this action.

**RESPECTFULLY SUBMITTED,**

By:   _/s/Sam Morgan_____
Sam Morgan (P36694)
**GASIOREK MORGAN**
Attorneys for Plaintiff
30500 Northwestern Highway, Suite 425
Farmington Hills, Michigan 48334
(T) (248) 865-0001 / (F) (248) 865-0002
smorgan@work-lawyers.com

Dated:   August 26, 2020